1
2
3
4
5
6
7
8                    IN THE UNITED STATES DISTRICT COURT

9              FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   LaPATRICK A. JOHNSON, G62253,          No. C 12-5897 CRB (PR)

12              Petitioner,                 **ORDER DENYING PETITION FOR A**
                                            **WRIT OF HABEAS CORPUS**
13        v.

14   FRED FOULK, Acting Warden,

15              Respondent.
     _____/
16

17        Petitioner, a prisoner incarcerated at High Desert State Prison ("HDSP"), has filed a

18   pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging a conviction

19   from Alameda County Superior Court.  For the reasons set forth below, the petition will be

20   denied.

21                            **STATEMENT OF THE CASE**

22        On June 2, 2009, a jury convicted Petitioner of two counts of committing a lewd act

23   on a child under fourteen years of age in violation of California Penal Code section 228(a).

24   The trial court also found that Petitioner had suffered seven prior convictions and had served

25   six prior prison terms.  The trial court sentenced Petitioner to 55 years to life in state prison.

26        On February 14, 2011, Petitioner unsuccessfully appealed his conviction to the

27   California Court of Appeal, and on June 8, 2011, the California Supreme Court denied

28   Petitioner's petition for review.  Petitioner then sought habeas relief from the California state

**United States District Court**
**For the Northern District of California**

United States District Court
For the Northern District of California

1    courts until October 10, 2012, when the California Supreme Court denied Petitioner's final

2    state petition for a writ of habeas corpus.

3         On November 19, 2012, Petitioner filed a petition for a writ of habeas corpus under 28

4    U.S.C. § 2254 in this Court.  Per order filed on March 8, 2013, the Court found that the

5    petition, when liberally construed, stated cognizable claims under § 2254 and ordered

6    Respondent to show cause why a writ of habeas corpus should not be granted.  On November

7    21, 2013, after the Court granted an extension of time, Respondent filed an answer and, on

8    December 12, 2013, Petitioner filed a traverse.

9                              **STATEMENT OF FACTS**

10        The California Court of Appeal summarized the facts of the case as follows:

11                              **Prosecution's Case**

12   **Jane Doe One**
     Jane Doe One was 10 years old at the time of the charged offense.  At the
13   time of trial, she resided in a psychiatric facility. She did not testify.  Jane
     Doe One's foster mother described Jane Doe One as "a special-needs
14   child." She had been diagnosed with posttraumatic stress disorder and
     psychotic disorder not otherwise specified.  In early 2007, Jane Doe One
15   attended day treatment at the Lincoln Child Center (Lincoln), a school for
     emotionally disturbed children.
16
     [Petitioner] attended the church where Jane Doe One's foster mother was a
17   minister.  He also performed occasional handyman services at her home on
     Sunnyside Street in Oakland.  At some point, [Petitioner] introduced Jane
18   Doe One's foster mother to Jane Doe Two's mother.  [Petitioner] described
     Jane Doe Two's mother as his girlfriend.
19
     On January 11, 2007, Jane Doe One's foster mother got her children ready
20   for school and asked her 18-year-old son to walk Jane Doe One outside to
     be picked up by the school bus.  Jane Doe One's foster mother then left the
21   house at around 7:15 a.m. to attend a nursing class.  The bus driver, who
     drove Jane Doe One to school that day, testified that Jane Doe One
22   appeared worried when she was picked up.  When asked what was wrong,
     Jane Doe One said that someone touched her.  When asked who touched
23   her, Jane Doe One said "Patrick" touched her at her house.  Once the bus
     arrived at school, the driver reported Jane Doe One's comments to a teacher.
24
     A Lincoln counselor testified that she was called to meet Jane Doe One at
25   the bus.  The counselor saw that Jane Doe One was crying and shaking.
     Jane Doe One told the counselor that "LaPatrick," who was a neighbor, had
26   been in her house.  Jane Doe One said "[h]e hurt me."  Jane Doe One
     pointed to her vaginal area and said "[h]e put his penis down there."  Jane
27   Doe One also said that Johnson had put his penis "[i]nside down there" and
     that "blood and stuff came out."  Jane Doe One told the counselor that this
28   had happened right before she came to school.  A Lincoln therapist also
     testified that Jane Doe One told her "LaPatrick" touched her in the crotch area.

                                      2

Jane Doe One's foster mother was called and told of Jane Doe One's allegations. She took Jane Doe One to the hospital, where they met with a hospital social worker. The social worker testified that she met Jane Doe One and her foster mother in the emergency waiting room. Jane Doe One said that a man named LaPatrick entered her home that morning and showed her his private parts and "put his private parts in her private parts."

Jane Doe One was examined by a nurse practitioner, who collected Jane Doe One's clothing, pubic hair combings, as well as swabs from Jane Doe One's mouth, rectum, vulva, and vagina. At her home, the police collected Jane Doe One's clothing and a pair of panties from her room. After obtaining a search warrant, police also collected a buccal swab from [Petitioner's] inner cheek.

The criminalist at the Oakland police crime laboratory, who performed the deoxyribonucleic acid (DNA) analysis in this case, testified that sperm cells were found on the swabs from Jane Doe One's vulva and rectum. Sperm cells were also found on a pair of Jane Doe One's underwear.

A DNA profile for [Petitioner] was created from the buccal swabs. A genetic profile for the sperm found on the swab from Jane Doe One's vulva was generated and compared to [Petitioner's] DNA profile. The profiles were consistent. The criminalist testified that a random correspondence would occur approximately once in four quintillion members of the population. Genetic profiles were also generated for the sperm found on the rectal swab and the underwear and compared to [Petitioner's] DNA profile. The profiles were consistent.

**Jane Doe Two**
Jane Doe Two's mother testified that she and [Petitioner] dated in 2006. She met him when he was living with Barbara, who was a friend and a neighbor. [Petitioner] moved in with Jane Doe Two and her mother in approximately June or July and lived with them for approximately three or four months. The relationship ended in September or October 2006.

Jane Doe Two testified at trial. She was seven years old during the period between August 1, 2006 and October 31, 2006, and lived on Sunnyside Street in Oakland. Jane Doe Two testified that [Petitioner], who she identified as "Red," did something "bad" to her body when she was in kindergarten or first grade. Jane Doe Two described being in her bedroom, at night, when [Petitioner] came in. According to Jane Doe Two, who was nine at the time of trial, "[Petitioner] always act[ed] like he was going to the bathroom. He'll actually come to my room." Jane Doe Two testified that the "naked part" of [Petitioner's] body, as well as his hand, touched her body. Jane Doe Two could not remember whether [Petitioner] touched her over or under her clothes. However, she did see his "private parts." She testified that this happened more than twice.

Jane Doe Two recalled [Petitioner] having touched her, before the incidents in her bedroom, when she spent the night at Barbara's house. Jane Doe Two did not remember precisely when the touching occurred, but testified that she was going to the fair the next day and that it was close to the end of the school year. Jane Doe Two testified that [Petitioner] touched her while she was watching a movie in the living room and that she was wearing a blue and red dress. Barbara and her grandchildren were asleep at the time.

She could not recall whether [Petitioner] touched her over, or under, her clothes. Jane Doe Two's mother testified that Jane Doe Two's sleepover at Barbara's house "would have to have been close to June" of 2006 "[b]ecause that's when the carnival is . . . ." This was before Jane Doe Two's mother and [Petitioner] began their relationship.

Jane Doe Two told [Petitioner] she was going to tell her mother what happened and [Petitioner] said he would kill her mother and brother if she did. Jane Doe Two did tell another child, a friend she knew as "Nu-Nu."

Nu-Nu testified that Jane Doe Two used to live in his apartment building. Nu-Nu recalled that, one day after school in the spring of 2007, he and Jane Doe Two were swinging when he asked why she had wet herself at his sister's sleepover a week earlier. Nu-Nu recalled Jane Doe Two saying that "[her stepdad] put [his] thing in her butt and he be feeling on her and stuff." Nu-Nu told Jane Doe Two to tell her mother. Jane Doe Two confided that [Petitioner] threatened to kill her mother if she did. Nu-Nu waited "like two days" and then told his own mother.

At some point, Nu-Nu's mother told Jane Doe Two's mother that something had happened between Jane Doe Two and [Petitioner]. Jane Doe Two's mother and [Petitioner] were no longer dating, but he still came by the house once or twice a week. When Jane Doe Two and her mother talked about it, her mother was angry and said that it "changed a lot of things" and that [Petitioner] would probably get in a lot of trouble. Jane Doe Two then said " 'no, mommy, I was just lying.'" Jane Doe Two's mother did not confront [Petitioner] or call the police. In June or July of 2007, Jane Doe Two went to stay with her godmother. Jane Doe Two again reported that [Petitioner] had molested her. This time, Jane Doe Two's mother called the police.

**Evidence of Prior Sexual Offense**

Jane Doe Three testified that, on December 22, 1995, she was 17 years old and living in Sacramento with her 18-month-old son. Jane Doe Three's mother called and arranged to meet a friend at Jane Doe Three's house. [Petitioner] arrived and Jane Doe Three called her mother to let her know. Her mother asked that [Petitioner] wait there. Jane Doe Three and [Petitioner] talked while waiting for her mother, who never arrived. [Petitioner] was drinking gin. Eventually, Jane Doe Three went to bed with her son, leaving [Petitioner] in her living room.

Jane Doe Three awoke when [Petitioner] got in bed with her and began "rubbing on [her] leg." Jane Doe Three told him to get out of her bed, but [Petitioner] got on top of her, spread her legs, and penetrated her vagina with his penis and his hands. Jane Doe Three was petrified and let [Petitioner] rape her because she did not want anything to happen to her son, who was in bed with her. [Petitioner] then returned to the living room. Jane Doe Three locked her bedroom door and called her boyfriend, who called the police.

**Defense Case**

Mechelle Johnson, [Petitioner's] sister, testified that, in approximately March 2006, she lived with [Petitioner] and his girlfriend, Ramona Gist, on 99th Avenue in Oakland. [Petitioner's] sister further testified that, after she moved out, [Petitioner] and Gist continued to live on 99th Avenue. She

knew because she moved into the building next door.  She testified that [Petitioner] continued living on 99th Avenue until "[t]he summertime of I'm going to say '07, maybe." [Petitioner's] sister testified that she saw him every day except one between 2006 and 2007.  She was there when [Petitioner] went to sleep every night in that time period.  An investigator with the Alameda County Public Defender's Office testified that she made unsuccessful efforts to locate Gist.

People v. Johnson, No. A125154, 2011 WL 493879, at **1-4 (Cal. Ct. App. Feb. 14, 2011) (footnotes omitted).

## STANDARD OF REVIEW

This Court may entertain a petition for a writ of habeas corpus on "behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

The writ may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Id. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts."  Williams v. Taylor, 529 U.S. 362, 412-13 (2000).  "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id. at 413.

"[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id. at 411.  A federal habeas court making the "unreasonable application" inquiry should ask

**United States District Court**
For the Northern District of California

1   whether the state court's application of clearly established federal law was "objectively

2   unreasonable." Id. at 409.

3        The only definitive source of clearly established federal law under 28 U.S.C. §

4   2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the

5   state court decision.  Id. at 412; Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003).

6   While circuit law may be "persuasive authority" for purposes of determining whether a state

7   court decision is an unreasonable application of Supreme Court precedent, only the Supreme

8   Court's holdings are binding on the state courts and only those holdings need be

9   "reasonably" applied.  Id.

10                              **CLAIMS & ANALYSIS**

11        Petitioner raises several grounds for relief which can be grouped into nine claims for

12   relief under § 2254: (1) suppression of evidence; (2) ineffective assistance of counsel; (3)

13   prosecutorial misconduct; (4) judicial misconduct; (5) improper jury instructions; (6)

14   improper admission of evidence; (7) Sixth Amendment Confrontation Clause violation; (8)

15   insufficiency of the evidence; and (9) improper denial of state law motion.

16        1.    Suppression of Evidence

17        Petitioner claims that he was denied due process because the prosecution knew of

18   Petitioner's sexual offender registration records, which showed that Petitioner did not live

19   with Jane Doe Two's mother in 2006, but withheld them, even though the records were "not

20   only exculpatory but impeaching in nature proving fact (sic) alibi was true."  Pet. at 44

21   (emphasis in original).  Petitioner's claim is without merit.

22        In Brady v. Maryland, 373 U.S. 83 (1963), the Supreme Court held that "the

23   suppression by the prosecution of evidence favorable to an accused upon request violates due

24   process where the evidence is material either to guilt or to punishment, irrespective of the

25   good faith or bad faith of the prosecution."  Id. at 87.  The Supreme Court since has made

26   clear that the duty to disclose such evidence applies even when there has been no request by

27   the accused, United States v. Angurs, 427 U.S. 97, 107 (1976), and that the duty

28   encompasses impeachment evidence as well as exculpatory evidence, United States v.

United States District Court
For the Northern District of California

<u>Bagley</u>, 473 U.S. 667, 676 (1985).  Evidence is material if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  <u>Cone v. Bell</u>, 556 U.S. 449, 469-70 (2009).  "A reasonable probability does not mean that the defendant 'would more likely that not have received a different verdict with the evidence,' only that the likelihood of a different result is great enough to 'undermine confidence in the outcome of the trial.'"  <u>Smith v. Cain</u>, 132 S. Ct. 627, 630 (2012) (quoting <u>Kyles v. Whitley</u>, 514 U.S. 419, 434 (1995)).  But the mere possibility that undisclosed information might have been helpful to the defense, or might have affected the outcome of the trial, is not enough for relief under <u>Brady</u>.  <u>United States v. Olsen</u>, 704 F.3d 1172, 1184 (9th Cir. 2013).

In sum, for a <u>Brady</u> claim to succeed, a petitioner must show that: (1) the evidence at issue is favorable to the accused, either because it is exculpatory or impeaching; (2) the evidence was suppressed by the prosecution, either willfully or inadvertently; and (3) the evidence was material (or, put differently, that prejudice ensued).  <u>Banks v. Dretke</u>, 540 U.S. 668, 691 (2004); <u>Strickler v. Greene</u>, 527 U.S. 263, 281-82 (1999).

Petitioner is not entitled to federal habeas relief on his <u>Brady</u> claim.  As a threshold matter, the record makes clear that Petitioner's sexual registration records were not suppressed or withheld.  The record shows that Petitioner filed an unsuccessful motion for substitution of counsel based on his counsel's failure to present evidence from his sexual registration records, namely evidence that he did not live with Jane Doe Two's mother in 2006 and which he contends is his "alibi" defense.  Pet'r's Mem. of P. & A. at 106.  As discussed in more detailed in connection with Petitioner's claim of ineffective assistance of counsel, Petitioner and his counsel were aware of the information in Petitioner's sexual registration records – which simply showed that in 2006 Petitioner was registered as living at an address other than that of Jane Doe Two's mother's – but counsel decided not to pursue a defense based on that information on the grounds that the evidence would alert the jury that Petitioner was a registered sex offender and that the evidence was not very strong.  <u>Id.</u> at 107, 110.  Petitioner has not shown that the sexual registration records were suppressed or that

United States District Court
For the Northern District of California

1    they were material.  His mere speculation that evidence from the sexual registration records

2    suggesting that he did not live with Jane Doe Two's mother in 2006 (or any other allegedly

3    suppressed but unspecified evidence) might have been helpful to the defense, or might have

4    affected the outcome of the trial, is not enough for relief under Brady.  See Olsen, 704 F.3d

5    at 1184; see also Wood v. Bartholomew, 516 U.S. 1, 6-8 (1995) (whether "reasonable

6    probability" exists may not be based on speculation without adequate support).  It simply

7    cannot be said that the state courts' rejection of Petitioner's Brady claim was objectively

8    unreasonable.  See 28 U.S.C. § 2254(d); Williams, 529 U.S. at 409.

9              2.    Ineffective Assistance of Counsel

10            Petitioner claims that he received ineffective assistance of counsel at both the

11   preliminary hearing and at trial.  Pet. at 23.  At the preliminary hearing, Petitioner claims that

12   he received ineffective assistance of counsel because counsel (Portnow): (a) failed to object

13   to conflicting counts; and (b) failed to move to dismiss one count for lack of probable cause.

14   Id.  At trial, Petitioner claims that he received ineffective assistance of counsel because

15   counsel (Dickinson): (a) did not review preliminary hearing transcripts; (b) did not file a

16   motion to dismiss; (c) failed to obtain police contact reports, arrest reports and registration

17   records; and (d) failed to introduce preliminary hearing transcripts, and documents which

18   substantially support and corroborate Petitioner's "alibi" defense.  Id. at 23, 25.  Petitioner's

19   claims of ineffective assistance of counsel are without merit.

20            A claim of ineffective assistance of counsel is cognizable as a claim of denial of the

21   Sixth Amendment right to counsel, which guarantees not only assistance, but effective

22   assistance of counsel.  Strickland v. Washington, 466 U.S. 668, 686 (1984).  The benchmark

23   for judging any claim of ineffectiveness must be whether counsel's conduct so undermined

24   the proper functioning of the adversarial process that the trial cannot be relied upon as having

25   produced a just result.  Id.

26            In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, Petitioner

27   must establish two things.  First, he must establish that counsel's performance was deficient,

28   i.e., that it fell below an "objective standard of reasonableness" under prevailing professional

**United States District Court**
For the Northern District of California

norms.  Id. at 687-88.  Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  Id.

To meet Strickland's first prong, the defendant must show that counsel's performance was deficient, meaning that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment.  Id. at 687.  To do this, the defendant must show that counsel's representation fell below an objective standard of reasonableness. Id. at 688.  The relevant inquiry is not what defense counsel could have done, but rather whether the choices made by defense counsel were reasonable.  See Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir. 1998).  "Although courts may not indulge 'post hoc rationalizations' for counsel's decisionmaking that contradicts the available evidence of counsel's actions, . . . neither may they insist counsel confirm every aspect of the strategic basis for his or her actions.  There is a 'strong presumption' that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than 'sheer neglect.'"  Harrington v. Richter, 131 S. Ct. 770, 790 (2011) (citations omitted).  It is unnecessary for a federal court considering a habeas ineffective assistance claim to address the prejudice prong of the Strickland test if the petitioner cannot even establish incompetence under the first prong.  See Siripongs v. Calderon, 133 F.3d 732, 737 (9th Cir. 1998).

Strickland's second prong requires the defendant to show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Strickland, 466 U.S. at 688.  The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different; a reasonable probability is a probability sufficient to undermine confidence in the outcome.  Id. at 694.  Where the defendant is challenging his conviction, the appropriate question is "'whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'"  Luna v. Cambra, 306 F.3d 954, 961 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 695).  A court need not determine whether counsel's

1    performance was deficient before examining the prejudice suffered by the defendant as a

2    result of the alleged deficiencies.  See Strickland, 466 U.S. at 697.

3         Petitioner does not show that his preliminary hearing counsel's performance was

4    deficient, i.e., that it fell below an objective standard of reasonableness.  See Strickland, 466

5    U.S. at 688.  The record shows that counsel was present fort the preliminary examination and

6    thoroughly cross-examined the four police officers who were witnesses.  Clerk's Tr. ("CT")

7    at 19-124.2.  The court consequently found that probable cause did not exist as to all of  the

8    alleged counts.  Id. at 123-124.1.  Petitioner's conclusory claim that counsel failed to object

9    to conflicting counts and to move to dismiss an unspecified count for lack of probable cause

10   is not enough to show that counsel's performance fell below an objective standard of

11   reasonableness.  See Toomey v. Bunnell, 898 F.2d 741, 743 (9th Cir. 1990) (petitioner has

12   burden of showing that counsel's performance was deficient).; see also Jones v. Gomez, 66

13   F.3d 199, 205 (9th Cir. 1995) (conclusory allegations of ineffective assistance of counsel do

14   not warrant federal habeas relief).  Petitioner also fails to show prejudice.  See Strickland,

15   466 U.S. at 693 (defendant must "affirmatively prove prejudice").  There is no indication

16   whatsoever that had counsel objected and/or filed the motion, it is reasonable that the court

17   would have sustained the objection and/or granted the motion as meritorious, and had the

18   objection been sustained and/or the motion been granted, it is reasonable that there would

19   have been an outcome more favorable to Petitioner.  See Wilson v. Henry, 185 F.3d 986, 990

20   (9th Cir. 1999).  After all, the information was amended after the preliminary hearing and

21   Petitioner was convicted of two counts of lewd acts on a child rather than the claims raised at

22   the preliminary hearing.  Petitioner is not entitled to federal habeas relief on his claim of

23   ineffective assistance of counsel at the preliminary hearing because the state courts' rejection

24   of the claim cannot be said to be an objectively unreasonable application of Strickland.  See

25   28 U.S.C. § 2254(d); Williams, 529 U.S. at 409.

26        Petitioner is not entitled to federal habeas relief on his claim of ineffective assistance

27   of counsel at trial either.  The gravamen of Petitioner's claim is that trial counsel's failure to

28   present evidence or file motions based on Petitioner's apartment lease or sexual registration

United States District Court
For the Northern District of California

records, which Petitioner argues show that he did not live with Jane Doe Two's mother in 2006, deprived Petitioner of his "alibi" defense.  The record shows that Petitioner filed a motion for substitution of counsel based on counsel's failure to pursue Petitioner's "alibi" defense.  Petr's Memo of P. & A. at 106.  The court heard testimony from Petitioner and his counsel in a proceeding that was closed to the prosecutor and to the public.  Id.  At the closed hearing, counsel stated that she had a lease agreement showing that in February 2006 Petitioner resided somewhere else than in Jane Doe Two's mother's home, but counsel did not want to use that evidence because Petitioner had been accused of molesting another victim at that same time and location.  Id. at 107.  Counsel also stated that she had reviewed Petitioner's sexual registration records, but decided not to use them to prove where Petitioner was registered as living in 2006 because the evidence would alert the jury of Petitioner's sexual offender status.  Id.  Petitioner disagreed with his counsel's tactical decisions, but the court found that Petitioner's counsel had made a sound professional judgment, that counsel had twenty years experience and that the court was not going to second-guess her.  Id. at 112. The court advised Petitioner that he had the right to testify in his own defense and elaborate on the issue of when he lived with Jane Doe Two's mother, but the issue was a small one in view of the scope of the charges in the case.  Id. at 111.  The court denied the motion for substitution of counsel.

Although Petitioner did not testify at trial, his counsel pursued Petitioner's "alibi" defense that he did not live with Jane Doe Two's mother in 2006 by calling Petitioner's sister to the stand.  Petitioner's sister testified that in March 2006 she lived with Petitioner and his girlfriend Ramona Gist at 1262 99th Avenue in Oakland, and that Petitioner remained at that address until the summer of 2007.  Rep.'s Tr. ("RT") at 829-30.  Petitioner's "alibi" defense that he did not live with Jane Doe Two's mother in 2006 was presented through means other that the lease agreement or the sexual registration records.

Under the circumstances, trial counsel's decision to present Petitioner's "alibi" defense through means other that the lease agreement or the sexual registration records did not amount to deficient performance.  Cf. Wong v. Belmontes, 558 U.S. 15, 22-28 (2009)

1    (noting that counsel made reasonable tactical decision in limiting additional evidence that

2    would have allowed prosecution to introduce evidence of defendant's prior crimes).  Nor has

3    Petitioner shown that there is a reasonable probability that, had counsel introduced the lease

4    agreement and/or sexual registration records, the result of the trial would have been different.

5    See Strickland, 466 U.S. at 694.  Petitioner is not entitled to federal habeas relief on his claim

6    of ineffective assistance of counsel at trial because the state courts' rejection of the claim

7    cannot be said to be an objectively unreasonable application of Strickland.  See 28 U.S.C. §

8    2254(d); Williams, 529 U.S. at 409.

9            3.    Prosecutorial Misconduct

10   Petitioner claims prosecutorial misconduct on the ground that the prosecutor did not

11   adequately "investigate the charges."  Pet. at 2.  Petitioner specifically claims that the

12   prosecutor failed to adequately investigate the count regarding Jane Doe Two (count two)

13   because, if he had, Petitioner's sexual offender registration records would have shown that

14   Petitioner did not live with Jane Doe Two's mother in 2006.  Petitioner's claim is without

15   merit.

16   A defendant's due process rights are violated if the prosecutor's misconduct "so

17   infected the trial with unfairness as to make the resulting conviction a denial of due process."

18   Darden v. Wainwright, 477 U.S. 168, 181 (1986); see Smith v. Phillips, 455 U.S. 209, 219

19   (1982) ("The touchstone of due process analysis in cases of alleged prosecutorial misconduct

20   is the fairness of the trial, not the culpability of the prosecutor.").  Federal habeas relief for

21   denial of due process based on prosecutorial misconduct also requires that the due process

22   violation had a substantial and injurious effect or influence on the jury's verdict.  See Brecht

23   v. Abrahamson, 507 U.S. 619, 637 (1993).

24   The record shows that the prosecutor investigated the evidence related to count two

25   and that it was strong.  Jane Doe Two, a young child, testified at trial that Petitioner molested

26   her, at a minimum, two times in her home during a period of time when Petitioner was in a

27   relationship with her mother and spending time at the house.  RT at 312-15, 317, 321, 323-

28   24, 338.  Jane Doe Two also testified that it happened once before at her neighbor Barbara's

United States District Court
For the Northern District of California

house. Id. at 324. In addition to recalling that Petitioner sexually molested her in the living room of Barbara's house after everyone had gone to bed, Jane Doe Two also remembered spending the night there, who else was staying there, what she was wearing and what she was watching on TV. Id. at 324-25, 328, 335, 345, 354-55, 361.

Petitioner is not entitled to relief on his claim of prosecutorial misconduct. Petitioner has not shown that the prosecution's case regarding lewd acts on Jane Doe Two was weak or seriously undermined by Petitioner's sexual offender registration records showing that Petitioner did not live with Jane Doe Two's mother in 2006. The prosecutor's alleged failure to consider Petitioner's sexual offender registration records did not render Petitioner's trial fundamentally unfair, see Darden, 477 U.S. at 181, or had a substantial and injurious effect or influence in determining the jury's verdict, see Brecht, 507 U.S. at 637. After all, the jury found Petitioner guilty of count two despite Petitioner presenting other evidence that he did not live with Jane Doe Two's mother in 2006. Petitioner is not entitled to federal habeas relief on his claim of prosecutorial misconduct because the state courts' rejection of the claim cannot be said to be objectively unreasonable. See 28 U.S.C. § 2254(d); Williams, 529 U.S. at 409.

4.    Judicial Misconduct

Petitioner claims that the trial judge's refusal to order Petitioner's counsel to submit Petitioner's lease agreement and/or sexual offender registration records to the jury at the closed hearing on Petitioner's motion to substitute counsel amounted to a denial of Petitioner's right to a fair and impartial judge. Pet. at 53-54. The claim is without merit.

The Due Process Clause guarantees a criminal defendant the right to a fair and impartial judge. See In re Murchison, 349 U.S. 133, 136 (1955). There are two general ways in which a defendant may establish that he was denied his constitutional right to a fair and impartial judge: (1) the appearance of judicial bias or advocacy, or (2) the judge's pecuniary or personal interest in the outcome of the proceedings. See Taylor v. Hayes, 418 U.S. 488, 501-04 (1974). A claim of judicial misconduct by a state judge in the context of federal habeas review does not simply require that the federal court determine whether the state

judge committed judicial misconduct; rather, the question is whether the state judge's behavior "rendered the trial so fundamentally unfair as to violate federal due process under the United States Constitution." Duckett v. Godinez, 67 F.3d 734, 740 (9th Cir. 1995). A state judge's conduct must be significantly adverse to a defendant before it violates constitutional requirements of due process and warrants federal intervention. See Garcia v. Warden, Dannemora Correctional Facility, 795 F.2d 5, 8 (2d Cir. 1986). "[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." Liteky v. United States, 510 U.S. 540, 555 (1994).

Petitioner's judicial misconduct claim is based on his disagreement with the trial judge's denial of his motion to substitute counsel and, more specifically, with the judge's expressed agreement with Petitioner's counsel's decision to withhold the rental agreement and sexual offender registration records. Pet. at 53-54, 60. As Petitioner puts it, the "trial court was partial in the trial[,]" failed to "peruse preliminary hearing transcripts which . . . provided substantial testimony to alibi[,]" and "refused to order counsel to submit . . . document[s]." Id. at 53. But it is well established that judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. See Liteky, 510 U.S. at 555. Petitioner sets forth no evidence that this was the rare case in which the judge "display[ed] a deep-seated favoritism or antagonism that would make fair judgment impossible." Id. Accord In Re Complaint of Judicial Misconduct, 715 F.3d 747, 749 (9th Cir. 2013) (standing alone, judge's dismissal of underlying case on the merits does not support claim of judicial misconduct); Ortiz v. Stewart, 149 F.3d 923, 939-40 (9th Cir. 1998) (post-conviction relief judge's evident disdain for petitioner's argument that several of his attorneys were ineffective for failing to discover each other's ineffectiveness simply reflected judge's frustration with the number of petitioners who attempted to manipulate the criminal justice system and did not amount to unconstitutional bias). Petitioner is not entitled to federal habeas relief on his

**United States District Court**
For the Northern District of California

1    claim of judicial misconduct because the state courts' rejection of the claim cannot be said to

2    be objectively unreasonable.  See 28 U.S.C. § 2254(d); Williams, 529 U.S. at 409.

3          5.    Improper Jury Instructions

4          Petitioner alleges two instances of improper jury instructions.  First, Petitioner claims

5    that the court erred by not instructing the jury on a lesser-included offense as to the two

6    counts of lewd acts on a child (counts one and two).  Pet. at 47.  Second, Petitioner claims

7    that the court erred when it responded affirmatively to a jury question during deliberations as

8    to whether they could consider offenses committed outside of the dates alleged by the

9    prosecutors.  Pet. at 69-70; Pet'r's Memo of P & A at 24.  Both claims are without merit.

10          A.    Failure to Give Lesser-Included Offense Instruction

11          The failure to instruct on a lesser-included offense in a capital case is constitutional

12    error if there was evidence to support the instruction.  See Beck v. Alabama, 447 U.S. 625,

13    638 (1980).  But the failure of a state trial court to instruct on lesser-included offenses in a

14    non-capital case does not present a federal constitutional claim.  See Solis v. Garcia, 219

15    F.3d 922, 929 (9th Cir. 2000); Windham v. Merkle, 163 F.3d 1092, 1105-06 (9th Cir. 1998).

16    Petitioner's claim that the trial court erred by not instructing the jury on a lesser-included

17    offense as to counts one and two fails because Petitioner's case was not a capital case.  See

18    id.  It also fails because Petitioner does not indicate what lesser-included offense instruction

19    should have been given, let alone what evidence supported such instruction.  Petitioner is not

20    entitled to federal habeas relief on his failure to give a lesser-included offense instruction

21    claim because the state courts' rejection of the claim cannot be said to be objectively

22    unreasonable.  See 28 U.S.C. § 2254(d); Williams, 529 U.S. at 409.

23          B.    Improper Response to Jury During Deliberations

24          1.    Background

25          The information charged Petitioner with lewd conduct against two minor victims.

26    Count one alleged a January 11, 2007 act against Jane Doe One.  CT at 269.  Count two

27    alleged an act committed "between August 1, 2006 and October 31, 2006" against Jane Doe

28    Two.  Id. at 271.

The trial court instructed the jury with CALCRIM No. 207, as follows:

> It is alleged that the crimes occurred on or about a certain date (Count One) or a certain time period (Count Two).  The People are not required to prove that the crimes took place exactly on that day or during that time period but only that it happened reasonably close to that day or reasonably close to that time period.

CT at 352.  The trial court also instructed the jury with CALCRIM No. 3501, as follows:

> The defendant is charged with lewd and lascivious act upon a child in Count Two sometime during the period of August 1, 2006 to October 31, 2006.
>
> The People have presented evidence of more than one act to prove that the defendant committed this offense.  You must not find the defendant guilty unless:
>
> 1. You all agree that the People have proved that the defendant committed at least one of these acts and you all agree on which act he committed; OR
> 2. You all agree that the People have proved that the defendant committed all the acts alleged to have occurred during this time period.

CT at 376.

The prosecution alleged and proved through Jane Doe Two's testimony that petitioner's lewd acts against her occurred at or near the dates alleged.  Petitioner's "alibi" defense was presented by his sister Mechelle Johnson, who testified that Petitioner and his girlfriend lived on 99th Avenue in Oakland between March 2006 and mid-2007.  RT at 829-31.  Mechelle Johnson also testified that she saw Petitioner every day and every evening.  Id. at 829-31.  But Petitioner presented no evidence that he was never in Jane Doe Two's neighbor Barbara's home or in Jane Doe Two's home near or between August 2006 and October 2006, when the crimes were alleged to have been committed.

During deliberations, the jury submitted a question to the court regarding the dates pertaining to count two – the count regarding Jane Doe Two.  Petitioner contested the court's response to the jury's question on direct appeal to the California Court of Appeal.  See Johnson, 2011 WL 493879, at *7.  The state appellate court considered and rejected Petitioner's claim as follows:

> During their deliberations, the jury submitted a question that read as follows: "Does the time frame for count 2 – August 1 to October 31, 2006 – preclude us from considering the incident at Barbara's house, when [Jane Doe Two] was allegedly assaulted by [Petitioner]. Our time line indicates that event took place in June 2006. In other words, does this count (2) only include the incident in [Jane Doe Two's] bedroom?"

16

**United States District Court**
For the Northern District of California

During discussion of the jury's question, [Petitioner's] trial counsel and the court engaged in the following exchange:

"[DEFENSE COUNSEL]: My thoughts are about the evidence. (Jane Doe 2) testified to June at the end of school. Her mother did not testify to that. The fresh complaint was specifically made in the springtime. So I don't think it's completely clear what the evidence shows. [¶] But assuming that we go with what (Jane Doe 2) said at the end of her testimony, that still leaves two months, outside frame, and I don't know if that's outside the realm of 'on or about.' It certainly seems like it should be outside the realm of 'on or about.' [¶] And I think if . . . [Petitioner] is put in a situation where there's a conviction for an offense that happened outside the time that the jury was originally given, I think he is prejudiced by that. And I would ask the Court to simply say 'no'– or say 'Yes, you may not consider it.'

"THE COURT: And I guess I'm wondering what the prejudice is, again, given that I've discussed – apparently had notice that this was a potential basis: This was argued by you, the witness was cross-examined on this point, or certainly was available – all the witnesses were – on this issue. [¶] The alibi – that's maybe not the technically correct word for Mechelle Johnson's testimony, but it was in the nature of an alibi to indicate he didn't live at a certain location for a period of time. That was, as I recall, March of 2006 to the summer of 2007. So that would still include this period of time, this June 2006, as they have in their timeline, such that the defense presented to the charge still pertains."

The trial court's response to the jury read: "As to Count Two, the People are required to prove beyond a reasonable doubt that a violation of section 288(a) occurred between August 1, 2006 and October 31, 2006. However, per instruction 207, they need only prove a violation occurred 'reasonably close to that time period.' Whether that has been satisfactorily proven to the required standard is up to you."

*Analysis*

[Petitioner] asserts that, with respect to count two, the court "allow[ed] conviction for an offense other than those charged and one which [he] was not put on notice that he would have to defend against . . . . [T]he error deprived [him] of his rights to have the jury decide the issues presented by his case (Sixth Amendment, United States Constitution) and his right to a fair trial. (Fifth Amendment and Fourteenth Amendment, United States Constitution.)"

[Petitioner] does not argue that his due process rights were violated because the information lacked specificity. [FN14] Rather, he attacks the trial court's use of the " 'on or about' instruction" (CALCRIM No. 207) with respect to count two. [FN15] [Petitioner] also argues that the error was compounded by the trial court's response to the jury's question. According to [Petitioner], the jury''s question shows that "[t]he jury was *not* persuaded that the offense took place within the August 1 through October 31 dates

alleged by the prosecution." He argues that the jury should have been limited to considering the time period stated in the information.

[FN14] In any event, such a claim would fail. (See *People v. Fortanel* (1990) 222 Cal.App.3d 1641, 1645 ["we conclude that it is unreasonable to require the pleading or proof of a specific day, even when defendant raises an alibi defense"].)

[FN15] As shown above, [Petitioner's] trial counsel did not object to the "on or about" instruction on the ground that it was inappropriate with respect to count two. In fact, defense counsel only objected that it was improper to give the instruction with respect to count one. We nonetheless review his new claim on the merits because section 1259 permits us to "review any instruction given, refused or modified, even though no objection was made thereto in the lower court, if the substantial rights of the defendant were affected thereby."

It is the People's evidence, rather than the dates stated in the information, that ordinarily limits the time period to be considered by the jury. "The precise date on which an offense was committed need not be stated in an accusatory pleading unless the date is material to the offense (§ 955), and the evidence is not insufficient merely because it shows the offense was committed on another date. [Citation.]" (*People v. Peyton* (2009) 176 Cal.App.4th 642, 660.) It is only "when the prosecution's proof establishes the offense occurred on a particular day to the exclusion of other dates, and when the defense is alibi (or lack of opportunity), [that] it is improper to give the jury an instruction using the 'on or about' language. [Citation.]" (*People v. Jennings* (1991) 53 Cal.3d 334, 358-359; see also *People v. Wrigley* (1968) 69 Cal.2d 149, 154-160.) When these conditions are not met, the "on or about" instruction does not "deflect the jury's attention from a crucial temporal element for which the defendant had an alibi." (*People v. Richardson* (2008) 43 Cal.4th 959, 1028.)

Accordingly, the use notes for CALCRIM No. 207 specifically provide: "This instruction should not be given: (1) when *the evidence* demonstrates that the offense was committed at a specific time and place and the defendant has presented a defense of alibi or lack of opportunity; and (2) when two similar offenses are charged in separate counts." (Judicial Council of Cal., Crim. Jury Instns. (2010) Bench Notes to CALCRIM No. 207, p. 33, italics added.) Our Supreme Court has said that this limitation "accurately recognizes the rule as developed by the courts." (*People v. Jones* (1973) 9 Cal.3d 546, 557 (*Jones*) [approving a similar comment to the analogous CALJIC No. 4.71], overruled on other grounds in *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1069, fn. 13.)

*Jones* and *People v. Barney* (1983) 143 Cal.App.3d 490 (*Barney*) illustrate the above rule. In *Jones*, a police officer testified that he purchased marijuana from the defendant on March 24. The defendant presented evidence suggesting he was out of state on that date. (*Jones, supra,* 9 Cal.3d at ¶. 556-557.) Accordingly, the Supreme Court held that it was error to instruct with CALJIC No. 4.71. [FN16] (*Id.* at ¶. 557-558.)

United States District Court
For the Northern District of California

[FN16] CALJIC No. 4.71 provided: " 'When, as in this case, it is alleged that the crime charged was committed "on or about" a certain date, if the jury finds that the crime was committed it is not necessary that the proof show that it was committed on that precise date; it is sufficient if the proof shows that the crime was committed on or about that date.' " (*Jones, supra,* 9 Cal.3d at p. 556, fn. 8.)

In *Barney,* the defendant was charged with committing a lewd act " 'on or about' February 8." However, the victim's testimony made clear that the offense happened sometime during the weekend of February 7 and 8. (*Barney, supra,* 143 Cal.App.3d at ¶. 497-498 .) The defendant presented evidence that showed a lack of opportunity to commit the offense on those dates. Accordingly, the court concluded that it was error for the trial court to give CALJIC No. 4.71. (*Id.* at p. 498.) The court reasoned: "Ordinarily, the People need not plead the exact time of commission of an alleged offense. ( [§ 955].) However, if the defense is alibi or, as here, lack of opportunity to commit the offense, the exact time of commission becomes critically relevant to the maintenance of the defense. An instruction which deflects the jury's attention from temporal detail may unconstitutionally impede the defense. The defendant is entitled as a matter of due process to have the time of commission of the offense fixed in order to demonstrate he was elsewhere or otherwise disenabled from its commission." (*Id.* at p. 497.)

Here, unlike in *Barney* or *Jones,* the prosecution's evidence did not fix the commission of any offense against Jane Doe Two on any particular date or dates, to the exclusion of all other dates. Accordingly, the trial court did not err.

Even if the trial court had committed error in its instructions, [Petitioner] has not shown any prejudice. He contends he was deprived of his opportunity to defend. But, [Petitioner's] "alibi" evidence, to the extent it can be characterized as such, consisted of Mechelle Johnson's testimony that he lived somewhere other than Sunnyside Street *between March 2006 and the summer of 2007.* [Petitioner] argues that he "presented evidence that he was *not* living with Doe 2's mother during the time-period of the alleged molestation," but that this "evidence would have little value defending against a charge that [he] molested Doe 2 on another date at a neighbor's house . . . ." (Bolding omitted.) However, Mechelle Johnson's testimony equally suggests that he was not living with Barbara in June 2006. We fail to see how the jury could have understood the challenged instructions to preclude consideration of [Petitioner's] defense.

Johnson, 2011 WL 493879, at **8-10.

## 2.   Analysis

To obtain federal collateral relief for errors in the jury charge, the Petitioner must show that the ailing state law instruction by itself so infected the entire trial that the resulting conviction violated due process.  See Estelle v. McGuire, 502 U.S. 62, 72 (1991).  The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record.  See id.  In other words, the court must

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1   evaluate jury instructions in the context of the overall charge to the jury as a component of

2   the entire trial process.  United States v. Frady, 456 U.S. 152, 169 (1982) (citing Henderson

3   v. Kibbe, 431 U.S. 145, 154 (1977)).  If constitutional error is found, the reviewing habeas

4   court also must find that the error had a substantial and injurious effect or influence in

5   determining the jury's verdict before granting relief.  See Calderon v. Coleman, 525 U.S.141,

6   146-47 (1998) (citing Brecht, 507 U.S. at 637).

7       The California Court of Appeal found no error in the trial court's jury charge because

8   it determined that the trial court's instructions and response to the jury's question accurately

9   conveyed California law.  The court also found that, even if there was error, Petitioner did

10  not show prejudice.  The state appellate court's determination that the trial court's jury

11  charge accurately conveyed state law is binding on this court.  See Bradshaw v. Richey, 546

12  U.S. 74, 76 (2005) (state court's interpretation of state law binds federal court sitting in

13  habeas corpus).  And its determination that Petitioner did not show prejudice from the jury

14  charge was not objectively unreasonable.  See 28 U.S.C. § 2254(d).  The record shows that

15  Petitioner and Jane Doe Two's mother were involved in a relationship in 2006 and continued

16  having contact with one another up until the time of Petitioner's arrest.  Jane Doe Two

17  testified that Petitioner molested her at her neighbor Barbara's house and at her house during

18  the period between August 1, 2006 and October 31, 2006.  Petitioner's defense hinged on his

19  sister's testimony that he lived on 99th Avenue in Oakland (and not on Sunnyside Street with

20  Jane Doe Two's mother) between March 2006 and the summer of 2007.  Contrary to

21  Petitioner's contention, the trial court's instruction to the jury that it was up to them to decide

22  whether an incident at Barbara's house in June 2006 was "on or about" August 1, 2006 and

23  October 31, 2006 did not preclude the jury from considering Petitioner's defense that he

24  lived elsewhere than Sunnyside Street to the June 2006 incident at Barbara's house.  Nor did

25  the instruction have a substantial and injurious effect or influence in determining the jury's

26  verdict in a case that boiled down to credibility.  See Brecht, 507 U.S. at 637.  Petitioner is

27  not entitled to federal habeas relief on his claim of improper jury instruction/response

28

**United States District Court**
For the Northern District of California

1  because the state courts' rejection of the claim cannot be said to be objectively unreasonable.

2  See 28 U.S.C. § 2254(d); Williams, 529 U.S. at 409.

3       6.       Improper Admission of Evidence

4

5       Petitioner claims improper admission of the biological evidence collected from Jane

6  Doe One on the grounds that the evidence was subject to "chain of custody violations" and

7  "in custody evidence tampering." Pet. at 64.  Petitioner's claim is without merit.

8       A state court's evidentiary ruling is not subject to federal habeas review unless the

9  ruling violates federal law, either by infringing upon a specific federal constitutional or

10  statutory provision or by depriving the defendant of the fundamentally fair trial guaranteed

11  by due process.  See Pulley v. Harris, 465 U.S. 37, 41 (1984); Jammal v. Van de Kamp, 926

12  F.2d 918, 919-20 (9th Cir. 1991).  Failure to comply with state rules of evidence is neither a

13  necessary nor a sufficient basis for granting federal habeas relief on due process grounds.

14  See Henry v. Kernan, 197 F.3d 1021, 1031 (9th Cir. 1999).  While adherence to state

15  evidentiary rules suggests that the trial was conducted in a procedurally fair manner, it is

16  certainly possible to have a fair trial even when state standards are violated.  Jammal, 926

17  F.2d at 919).  The due process inquiry in federal habeas review is whether the admission of

18  evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair.

19  Walters v. Maass, 45 F.3d 1355, 1357 (9th Cir. 1995).  Even if an evidentiary error is of

20  constitutional dimension, the court must consider whether the error was prejudicial under

21  Brecht v. Abrahamson, 507 U.S. 619 (1993).  Dillard v. Roe, 244 F.3d 758, 767 n.7 (9th Cir.

22  2001).

23       Here, the record shows that Julie Jaecksch, an evidence technician for the Oakland

24  Police Department (OPD), testified that she responded to Jane Doe One's residence at 9925

25  Sunnyside.  RT at 587.  Jaecksch took photographs of Jane Doe One's home, her bedroom, a

26  broken light fixture and took possession of a pair of Jane Doe One's underwear.  Id. at 588-

27  89.  Jaecksch also took control of a paper bag of Jane Doe One's clothing, provided to her by

28  Officer Glover at the scene.  Id. at 590.  After Jaecksch left Jane Doe One's home, she

collected a sexual assault evidence kit from Children's Hospital containing biological samples collected from Jane Doe One at Children's Hospital. Id. at 592. Jaecksch did not open the kit and turned it over to the OPD's property department. Id. at 594.

OPD Officer Herbert Webber testified as to his collection of a buccal swab from Petitioner's inner cheek. Id. at 647-49. Webber placed the buccal swab in an envelope and sealed it. Id. at 649.

Laura Silver, a criminalist for the OPD Crime Lab, testified as an expert witness. Silver examined clothing and items, including Q-Tip swabs, from sexual assault evidence kits. Id. at 659. A DNA profile was developed for Petitioner with the buccal sample that she testified was held in a sealed envelope. Id. at 677. Also, a DNA profile was developed for Jane Doe One using samples from the sexual assault evidence kit. Id. Swabs had been collected from Jane Doe One's vagina, vulva and rectum, as well as oral swabs and fluid swabs taken from her thigh, knee and her underwear. Id. at 684-85, 687, 698. All sperm samples collected from Jane Doe One's body matched Petitioner's DNA. Id. at 717. Other samples collected from Jane One's body or clothing, including epithelial samples found on Jane Doe One's underwear, were also consistent with Petitioner's DNA. Id. at 705, 714.

Petitioner presents no evidence whatsoever beyond his own conjecture that any chain of custody violation took place or that any biological sample was tampered with or compromised. In fact, the uncontroverted testimony in the record demonstrates that all parties involved in the collection of biological evidence properly followed state rules for establishing chain of custody. See People v. Lucas, 12 Cal. 4th 415, 444 (1995). Petitioner's conclusory and purely speculative improper admission of evidence claim is not enough to establish a due process violation that had a substantial and injurious effect or influence in determining the jury's verdict. See Brecht, 507 U.S. at 637. Petitioner is not entitled to federal habeas relief on his improper admission of evidence claim because the state courts' rejection of the claim cannot be said to be objectively unreasonable. See 28 U.S.C. § 2254(d); Williams, 529 U.S. at 409.

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

7.    Sixth Amendment Confrontation Clause

Petitioner claims that the trial court's admission of Jane Doe One's out-of-court statements to third parties violated his Sixth Amendment Confrontation Clause rights.  Pet'r's Memo of P. & A. at 7.  Petitioner's claim is without merit because Jane Doe One's statements were not testimonial or admitted to establish the truth of the matter asserted.

The Confrontation Clause of the Sixth Amendment provides that in criminal cases the accused has the right to "be confronted with the witnesses against him."  U.S. Const. amend. VI.  The ultimate goal of the Confrontation Clause is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee.  Crawford v. Washington, 541 U.S. 36, 61 (2004).  The Confrontation Clause applies to all "testimonial" statements.  Id. at 50-51.  "Testimony . . . is typically a solemn declaration or affirmation made for the purpose of establishing or proving some fact."  Id. at 51 (internal quotation marks and citations omitted).  The Confrontation Clause applies not only to in-court testimony but also to out-of-court statements introduced at trial, regardless of the admissibility of the statements under state laws of evidence.  Id. at 50-51.

Out-of-court statements constitute hearsay when offered in evidence to prove the truth of the matter asserted.  Anderson v. United States, 417 U.S. 211, 219 (1974).  The Confrontation Clause applies to out-of-court testimonial statements offered for the truth of the matter asserted, i.e., testimonial hearsay.  Crawford, 541 U.S. at 51.  But while the Confrontation Clause does not necessarily bar the admission of hearsay statements, it may prohibit introducing evidence that otherwise would be admissible under a hearsay exception.  See Idaho v. Wright, 497 U.S. 805, 813, 814 (1990).  A statement is testimonial hearsay, and thus Crawford applies, when the primary purpose of taking the out-of-court statement is to create an out-of-court substitute for trial testimony.  Michigan v. Bryant, 131 S. Ct. 1143, 1155 (2011).  When the primary purpose is not to create an out-of-court substitute for trial testimony, then "the admissibility of the statement is the concern of state and federal rules of evidence, not the Confrontation Clause."  Id.  In determining the primary purpose of the

23

United States District Court
For the Northern District of California

statement, "'the relevant inquiry is not the subjective or actual purpose of the individuals involved in a particular encounter, but rather the purpose that reasonable participants would have had, as ascertained from the individuals' statements and actions and the circumstances in which the encounter occurred." United States v. Rojas-Pedroza, 716 F.3d 1253, 1267 (9th Cir. 2013) (quoting Bryant, 131 S. Ct. at 1156).

Confrontation Clause claims are subject to harmless error analysis. United States v. Nielsen, 371 F.3d 574, 581 (9th Cir. 2004) (post-Crawford case). For purposes of federal habeas corpus review, the standard applicable to violations of the Confrontation Clause is whether the inadmissible evidence had an actual and prejudicial effect upon the jury. See Hernandez v. Small, 282 F.3d 1132, 1144 (9th Cir. 2002) (citing Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)).

Here, the record shows that Jane Doe One was considered a "special needs" child and that she did not testify at trial. RT at 457. The prosecutor nonetheless moved to admit Jane Doe One's statements to her bus driver (Seymour), school official (Johnson), school social worker (Carbajal), and Children's Hospital medical examiner (Lickiss). After a hearing outside of the presence of the jury, the court ruled that the statements to Seymour, Johnson and Carbajal were admissible as non-testimonial and non-hearsay statements. Id. at 269-76.

Pursuant to the trial court's ruling, the following testimony was admitted. Lakecia Seymour, a bus driver for the Durham School Services, drove Jane Doe One to school on January 11, 2007. Id. at 511-12. She picked up Jane Doe One at her Sunnyside Street home. Id. at 513. When Seymour hit the horn to indicate her arrival, Jane Doe One came outside but appeared worried. Id. at 513, 514, 520. Seymour asked Jane Doe One what was wrong, and Jane Doe One responded, "someone touched me." Id. at 515. She further told Seymour that "Patrick touched her in the house." Id.

Casandra Johnson, a counselor at the Lincoln Child Center (LCC), was called to meet the bus because Jane Doe One was upset and crying. Id. at 523-24, 543. Jane Doe One told Johnson that Petitioner, who was her neighbor, had been in her house and had hurt her. Id. at

24

United States District Court

For the Northern District of California

528.  Jane Doe One pointed to her vaginal area when asked where Petitioner hurt her.  <u>Id.</u> at 528-29.  Jane Doe One repeated that Petitioner "hurt" her and that he put "his penis down there," and it was inside.  <u>Id.</u> at 529-30.

Heather Carbajal, a therapist at LCC who met with Jane Doe One once a week at the school as part of ongoing therapy, testified that Jane Doe One told her that "LaPatrick came in and touched her down there, and she motioned to her crotch area."  <u>Id.</u> at 555.

Petitioner argues that the admission of Jane Doe One's out-of-court statements to Seymour, Johnson and Carbajal violated his Sixth Amendment rights to confrontation.  Not so.  The Confrontation Clause pertains exclusively to "testimonial" statements made for the purpose of creating an out-of-court substitute for trial testimony.  <u>See</u> <u>Bryant</u>, 131 S. Ct. at 1155; <u>Davis v. Washington</u>, 547 U.S. 813, 821 (2006); <u>Crawford</u>, 541 U.S. at 50-51.  Here, the trial court properly determined that Jane Doe One's statements were not testimonial.  The statements were made by a minor, on her own and to non-law enforcement individuals. <u>Accord</u> <u>Leavitt v. Arave</u>, 383 F.3d 809, 830 n.22 (9th Cir. 2004) (victim's statements made on her own to the police reporting an attempt to enter her home not testimonial).  Petitioner's Confrontation Clause rights were not implicated by the admission of Jane Doe One's out-of-court statements to Seymour, Johnson or Carbajal.  Nor did the statements implicate any federal or state prohibition on the admission of hearsay evidence – the statements were not hearsay because they were not admitted for their truth, but rather as spontaneous statements and as statements that explained the effect on the listener.  <u>See</u> <u>Anderson</u>, 417 U.S. at 219. Petitioner is not entitled to federal habeas relief on his Confrontation Clause claim because the state courts' rejection of the claim cannot be said to be objectively unreasonable.  <u>See</u> 28 U.S.C. § 2254(d); <u>Williams</u>, 529 U.S. at 409.

8.    <u>Sufficiency of the Evidence</u>

Petitioner claims that "there was 'insufficient evidence' to support jury's verdict of guilty of count one" and "'[i]nsufficient evidence' to support guilty [verdict] to count two" –

United States District Court
For the Northern District of California

1    his two convictions for committing a lewd act on child under the age of fourteen.  Pet. at 64-

2    65.  Petitioner's claim is without merit.

3         A state prisoner who alleges that the evidence in support of his state conviction cannot

4    be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a

5    reasonable doubt states a constitutional claim, which, if proven, entitles him to federal habeas

6    relief.  Jackson v. Virginia, 443 U.S. 307, 321, 324 (1979).  But the Supreme Court has made

7    clear that "Jackson claims face a high bar in federal habeas proceedings . . . ."  Coleman v.

8    Johnson, 132 S. Ct. 2060, 2062 (2012).  A federal court "determines only whether, 'after

9    viewing the evidence in the light most favorable to the prosecution, any rational trier of fact

10   could have found the essential elements of the crime beyond a reasonable doubt.'"  Payne v.

11   Borg, 982 F.2d 335, 338 (9th Cir. 1992) (quoting Jackson, 443 U.S. at 319).  Only if no

12   rational trier of fact could have found proof of guilt beyond a reasonable doubt, has there

13   been a due process violation.  Jackson, 443 U.S. at 324; Payne, 982 F.2d at 338.  The Jackson

14   standard must be applied with explicit reference to the substantive elements of the criminal

15   offense as defined by state law.  Jackson, 443 U.S. at 324 n.16.

16        Under 28 U.S.C. § 2254(d), sufficiency of the evidence claims on federal habeas

17   review are subject to a "twice-deferential standard."  Parker v. Matthews, 132 S. Ct. 2148,

18   2152 (2012).  First, relief must be denied if, viewing the evidence in the light most favorable

19   to the prosecution, there was evidence on which "any rational trier of fact could have found

20   the essential elements of the crime beyond a reasonable doubt."  Id. (quoting Jackson, 443

21   U.S. at 324).  Second, a state court decision denying a sufficiency challenge may not be

22   overturned on federal habeas unless the decision was "objectively unreasonable."  Id.

23   (quoting Cavazos v. Smith, 132 S. Ct. 2, 4 (2011)).

24        Petitioner was convicted of two counts of committing a lewd or lascivious act upon a

25   child under fourteen years of age.  Cal. Penal Code § 288(a).  The conviction requires proof

26   of the following elements: (1) a person touched the body of a child; (2) "the child was under

27

28

14 years of age;" and (3) the touching was done with the intent to, arouse, appeal to, or gratify the lust, passions, or sexual desire of that person or the child. Id.; CT at 262.

As to count one, Petitioner argues that the DNA evidence against him was unreliable. As discussed earlier, Petitioner's conclusory and speculative challenge to the DNA evidence is without merit. He simply cannot escape the fact that the evidence against him on count one was compelling. Jane Doe One, who was under fourteen years of age, immediately reported to her bus driver the morning of the incident that Petitioner had touched her in the crotch area. Rat T 513, 515. She also reported being molested by Petitioner to a counselor at school, to her therapist and to the social worker at Children's Hospital. Id. at 528-30, 542-43, 555, 576, 581. In addition, semen collected from Jane Doe One's vagina, vulva and rectum matched Petitioner's. Id. at 697, 702-05, 709-10, 712, 714, 717. Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact certainly could have found that, beyond a reasonable doubt, Petitioner committed a lewd act on Jane Doe One. See Jackson, 443 U.S. at 319.

As to count two, Petitioner points to his "alibi" defense and argues that the evidence did not show that he lived with Jane Doe Two's mother during the time in question. But he cannot escape the fact that the overall evidence against him on count two was more than enough to support a conviction. Jane Doe Two testified at trial and recalled Petitioner molesting her at least two times in her home when Petitioner was in a relationship with her mother. RT at 312-15, 317, 321, 323-24, 338. Jane Doe Two also recalled, with specific detail, a previous time at her neighbor Barbara's house when Petitioner sexually molested her after everyone in the house had gone to bed. Id. at 324-26, 328, 335, 345, 354-55, 361. To be sure, Petitioner's sister testified that Petitioner lived elsewhere than with Jane Doe Two's mother during the relevant time period. But viewing the evidence in the light most favorable to the prosecution, a rational trier of fact certainly could have found that, beyond a reasonable doubt, Petitioner committed a lewd act on Jane Doe Two. See Jackson, 443 U.S. at 319. After all, it is well established than, if confronted with a record that supports conflicting inferences, a federal habeas court "must presume – even if it does not

United States District Court
For the Northern District of California

1  affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor

2  of the prosecution, and must defer to that resolution." Id. at 326.

3       Petitioner is not entitled to federal habeas relief on his claim of insufficiency of the

4  evidence.  The state courts' rejection of the claim was not objectively unreasonable.  See 28

5  U.S.C. § 2254(d); Williams, 529 U.S. at 409; see also Coleman, 132 S. Ct. at 2065

6  (reviewing court may not substitute its judgment for that of the jury).

7       9.    Improper Denial of State Law Motion

8

9       Petitioner seeks federal habeas relief on the ground that the trial court improperly

10  denied his motion for a new trial under California Penal Code section 1118.1.  The claim is

11  without merit.

12       A person in custody pursuant to the judgment of a state court can obtain a federal writ

13  of habeas corpus only on the ground that he is in custody in violation of the Constitution or

14  laws or treating of the United States.  28 U.S.C. § 2254(a).  In other words, "it is only

15  noncompliance with federal law that renders a State's criminal judgment susceptible to

16  collateral attack in the federal courts."  Wilson v. Corcoran, 131 S. Ct. 13, 16 (2010)

17  (emphasis in original).  Accordingly, the Supreme Court repeatedly has held that federal

18  habeas is unavailable for violations of state law or for alleged error in the interpretation or

19  application of state law.  See Swarthout v. Cooke, 131 S. Ct. 859, 861-62 (2011); Estelle v.

20  McGuire, 502 U.S. 62, 67-68 (1991).  It is unavailable merely because "something in the

21  state proceedings was contrary to general notions of fairness or violated some federal

22  procedural right unless the Constitution or other federal law specifically protects against the

23  alleged unfairness or guarantees the procedural right in state court." Middleton v. Cupp, 768

24  F.2d 1083, 1085 (9th Cir. 1985).

25       Petitioner's claim that the state trial court should have been granted his motion for a

26  new trial under California Penal Code section 1118.1 amounts to no more than a claim for

27  violation of state law or for error in the interpretation or application of state law.  See

28  Swarthout, 131 S. Ct. at 861-62; Estelle, 502 U.S. at 67-68.  There is no indication

whatsoever that the denial of the motion in any way amounted to a federal constitutional violation. Petitioner is not entitled to federal habeas relief on his claim that the trial court improperly denied his motion for a new trial under state law.

## CONCLUSION

After a careful review of the record and pertinent law, the Court is satisfied that the petition for writ of habeas corpus must be DENIED.

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases, a certificate of appealability ("COA") under 28 U.S.C. § 2253(c) also is DENIED because Petitioner has not demonstrated that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000).

The clerk shall enter judgment in favor of Respondent, terminate all pending motions as moot and close the file.

SO ORDERED.

DATED:  April 17, 2014

CHARLES R. BREYER
United States District Judge

G:\PRO-SE\CRB\HC.12\Johnson, L.12-5897.denial.final.wpd